# Exhibit No. P-1



## NOTE

| July 22, 2019 | San Antonio, | Texas |
|---|---|---|
| [Date] | [City] | [State] |

11834 Pure Silver, San Antonio, TX 78254
**[Property Address]**

**1.  BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. **$201,286.00**     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  **InterLinc Mortgage Services, LLC, a Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  **4.125 %.**
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**
**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the  **1st**     day of each month beginning on **September 1, 2019.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August 1, 2049,**     I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  **10613 West Sam Houston Pkwy, N. Ste 200**
**Houston, TX 77064**
or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S.  **$975.53.**

**4.  BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.  LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of **15 calendar days** after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and

**MULTISTATE FIXED RATE NOTE** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**     Form 3200 1/01
Modified for FHA 9/15 (rev. 2/18)
Ellie Mae, Inc.

FHA3200NOT  0216
FHA3200NOT (CLS)
07/22/2019 10:44 AM PST

LOAN #: ▮▮▮▮▮▮

all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Pablo Rovirosa Reyes_ _____ (Seal)
**PABLO ROVIROSA REYES**

Lender: InterLinc Mortgage Services, LLC
NMLS ID: 205696
Loan Originator: John Larry Lopez
NMLS ID: 194999

[Sign Original Only]



## ALLONGE

**Loan Number:** ▮▮▮▮▮▮▮▮

**Borrower:** Pablo Rovirosa Reyes

**Note Date:** 07/22/2019

**Loan Amount:** $201,286.00

**Property Address:** 11834 Pure Silver
San Antonio, TX 78254

Pay to the Order of

Caliber Home Loans Inc.

Without recourse

InterLinc Mortgage Services, LLC,
a Limited Liability Company

Gail Sims, Vice President of Closing Operations

# ALLONGE TO THE NOTE

CALIBER LOAN#:        ████████

SELLER LOAN #:       ████████

NOTE DATE:           07/22/2019

MORTGAGOR (S):       PABLO ROVIROSA REYES

PROPERTY ADDRESS:    11834 PURE SILVER
                     SAN ANTONIO
                     TX 78254

LOAN AMOUNT:         $201,286

Without Recourse,

PAY TO THE ORDER OF:

CALIBER HOME LOANS, INC.

Julie McAllister / Operations Support Manager

# Exhibit No. P-2

When recorded, mail to:
**INDECOMM GLOBAL SERVICES**
**FD IL 9600**
**1260 ENERGY LANE**
**ST. PAUL, MN 55108**

This document was prepared by:
**POLUNSKY BEITEL GREEN, LLP.**
**17806 IH 10 WEST, SUITE 450**
**SAN ANTONIO, TX 78257**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.
**(A) "Security Instrument"** means this document, which is dated **July 22, 2019,** together with all Riders to this document.
**(B) "Borrower"** is **PABLO ROVIROSA REYES, JOINED HEREIN PRO FORMA BY MY SPOUSE, SAMANTHA LYNN ROVIROSA.**

Borrower is the grantor under this Security Instrument.
**(C) "Lender"** is **InterLinc Mortgage Services, LLC .**

Lender is **a Limited Liability Company,** organized and existing
under the laws of **Texas.**
Lender's address is **10613 West Sam Houston Pkwy, N. Ste 200, Houston, TX 77064**

Lender includes any holder of the Note who is entitled to receive payments under the Note.
**(D) "Trustee"** is **Allan B. Polunsky.**

TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044    1/01 (rev. 10/17)

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated    **July 22, 2019.**    The Note states that Borrower owes Lender    **TWO HUNDRED ONE THOUSAND TWO HUNDRED EIGHTY SIX AND NO/100** ********
**************************************************** Dollars (U.S. **$201,286.00**         )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1, 2049.**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☒ Planned Unit Development Rider
☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County**
[Type of Recording Jurisdiction]
of **Bexar**
[Name of Recording Jurisdiction]:
**LOT 16, BLOCK 134, SILVER OAKS SUBDIVISION UNIT 20, A SUBDIVISION IN BEXAR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 9649, PAGE 208, OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.**
**APN #: 1185045**

[Street] [City]

Texas  **78254**        ("Property Address"):
      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.  Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

TEXAS – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044    1/01 (rev. 10/17)**        $\mathcal{DD}\,\mathcal{D}\ \cup\,\mathcal{D}$

(including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3044   1/01 (rev. 10/17)

60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing

Party means the third party that owes Borrower Miscellaneous Proceeds of the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all

TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044    1/01 (rev. 10/17)

same secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

TEXAS — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3044     1/01 (rev. 10/17)

eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**24. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 24, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law. Lender or its designee shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be public, occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 24, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

**25. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**26. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**27. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due

and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**28. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**29. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☒  **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐  **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐  **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐  **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.


_Pablo Rovirosa Reyes_ _____     _7/22/19_ (Seal)
**PABLO ROVIROSA REYES**                                      DATE

_Samantha Lynn Rovirosa_ _____     _7-22-19_ (Seal)
**SAMANTHA LYNN ROVIROSA**                                   DATE


TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3044     1/01 (rev. 10/17)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                Page 9 of 10

Initials: _PRR  SLR_
TXEFHA15DE   0118
TXEDEED (CLS)
07/22/2019 10:44 AM PST

State of _Texas_                                                                County of _Bexar_

Before me, _Jimena Cisnero_____, on this day personally appeared PABLO ROVIROSA REYES AND SAMANTHA LYNN ROVIROSA, known to me (or proved to me on the oath of _____ or through _DL___) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _22nd_ day of _July_, _2019_

                                                  _____
                                                  (Notary Public Signature)

JIMENA CISNEROS
Notary Public, State of Texas
Comm. Expires 02-18-2022
Notary ID 128179656

Lender: InterLinc Mortgage Services, LLC
NMLS ID: 205696
Loan Originator: John Larry Lopez
NMLS ID: 194999

TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044    1/01 (rev. 10/17)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                        Page 10 of 10

Initials: _PRR_ _SLR_
TXEFHA15DE    0118
TXEDEED (CLS)
07/22/2019 10:44 AM PST

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **22nd** day of **July, 2019,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **InterLinc Mortgage Services, LLC, a Limited Liability Company**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
**11834 Pure Silver**
**San Antonio, TX 78254.**

The Property Address is a part of a planned unit development ("PUD") known as **SILVER OAKS**

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then:
    (i) Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and
    (ii) Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.
Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA Multistate PUD Rider - 9/2014
Ellie Mae, Inc.

Page 1 of 2

Initials: _PRR_ _SJR_
FHA15PUDRD 0815
P8700PUU (CLS)
07/22/2019 10:44 AM PST



BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions
contained in this PUD Rider.

*Pablo Rovirosa  Reyes*          7/22/19  (Seal)
**PABLO ROVIROSA REYES**                                        DATE

*Samantha Lynn Rovirosa*          7-22-19 (Seal)
**SAMANTHA LYNN ROVIROSA**                                      DATE

FHA Multistate PUD Rider - 9/2014
Ellie Mae, Inc.                    Page 2 of 2

Initials: *PRR  SLR*
FHA15PUDRD  0815
P8700PUU (CLS)
07/22/2019 10:44 AM PST

STATE OF **TEXAS**                                     }
COUNTY OF **Bexar**                                   } SS.
**11834 Pure Silver**
**San Antonio, TX 78254**

Before me, the undersigned authority duly authorized to take acknowledgments and administer oaths personally appeared: **Pablo Rovirosa Reyes**

("Affiants") who, upon being duly sworn, depose and say as follows:

1.    Affiants hereby certify that, upon taking title to the real property described above, their occupancy status will be as follows:

[ x ]  1.1   **Primary Residence:** At least one borrower will occupy, establish, and use the Property identified above as my/our principal residence within 60 days after the execution of the Security Instrument and shall continue to occupy the Property as my/our principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing.

[  ]   1.2   **Second Home:** At least one borrower will occupy the property as a second home (vacation, etc) while maintaining a principal residence elsewhere.

[  ]   1.3   **Investment Property:** Not owner occupied. Purchased as an investment to be held or rented.

[  ]   1.4   **REFINANCES ONLY**
            I/We the undersigned certify that the property referenced above is NOT currently listed for sale or under contract to be listed for sale.

            **I/We the undersigned acquired the property on**

2.    Affiants acknowledge that this Affidavit of Occupancy is given as a material inducement to cause:
      **InterLinc Mortgage Services, LLC**

      to make a mortgage loan to Affiants and that any false statements, misrepresentations or material omissions shall constitute a breach of the Affiant's obligation to:
      **InterLinc Mortgage Services, LLC**

      and that all the provisions of the mortgage indenture concerning default on the Promissory Note will thereupon be in full force and effect.

3.    Affiants further acknowledge that they have read and understand the following:
      **18 United States Code Section 1014:**
      "Whoever knowingly makes any false statement or report....for the purpose of influencing in any way the action of...any institution the accounts of which are insured by the Federal Deposit Insurance Corporation, any Federal home loan bank, the Federal Housing Finance Board, the Federal Deposit Insurance Corporation, the Farm Credit System Insurance Corporation, or the National Credit Union Administration Board,...upon any application,...or loan,...shall be fined not more than $1,000,000 or imprisoned not more than 30 years or both."

4.    The agreements and covenants contained herein shall survive the closing of the mortgage loan transaction.


_Pablo Rovirosa Reyes_                                           7/22/19
**PABLO ROVIROSA REYES**                                              DATE

State of _Texas_

County of _Bexar_

Before me, _Jimena Cisneros_ , on this day personally appeared PABLO ROVIROSA REYES, known to me (or proved to me on the oath of _____ or through _IXIL_) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _22nd_ day of _July, 2019_

**(Notary Public Signature)**

JIMENA CISNEROS
Notary Public, State of Texas
Comm. Expires 02-18-2022
Notary ID 128179656

**File Information**

**eFILED IN THE OFFICIAL PUBLIC eRECORDS OF BEXAR COUNTY
LUCY ADAME-CLARK, BEXAR COUNTY CLERK**

| | |
|---|---|
| **Document Number:** | 20190141487 |
| **Recorded Date:** | July 23, 2019 |
| **Recorded Time:** | 1:09 PM |
| **Total Pages:** | 15 |
| **Total Fees:** | $78.00 |

**\*\* THIS PAGE IS PART OF THE DOCUMENT \*\***

**\*\* Do Not Remove \*\***

Any provision herein which restricts the sale or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this instrument was eFILED in File Number Sequence on this date and at the time stamped hereon by me and was duly eRECORDED in the Official Public Record of Bexar County, Texas on: 7/23/2019 1:09 PM



Lucy Adame-Clark
**Lucy Adame-Clark**
**Bexar County Clerk**

Caliber Home Loans, Inc.

and When Recorded Mail To:
Caliber Home Loans, Inc.

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for InterLinc Mortgage Services, LLC, its successors and assigns**, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is P.O. Box 2026, Flint, MI 48501-2026, does hereby grant, convey, assign and deliver to **CALIBER HOME LOANS, INC.**, whose address is **13801 WIRELESS WAY**, **OKLAHOMA CITY**, **OK 73134**, all its right, title and interest in and to said Deed of Trust in the amount of **$201,286.00**, recorded in the **State of Texas, Bexar County,** Official Records dated **July 22, 2019** and recorded on **July 23, 2019** as Instrument No. **20190141487**.

Executed by: **PABLO ROVIROSA REYES, JOINED HEREIN PRO FORMA BY MY SPOUSE, SAMANTHA LYNN ROVIROSA.**, as Trustors, and **Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for InterLinc Mortgage Services, LLC, its successors and assigns**, as the Original Beneficiary.

Legal Description: **LOT 16, BLOCK 134, SILVER OAKS SUBDIVISION UNIT 20, A SUBDIVISION IN BEXAR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 9649, PAGE 208, OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY TEXAS. APN #: 1185045**

Property Address:    **11834 PURE SILVER, SAN ANTONIO, TX 78254**

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on    March 18, 2022    .

> **Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for InterLinc Mortgage Services, LLC, its successors and assigns**
>
> **Edwin Otzoy, Assistant Secretary**

### NOTARY ACKNOWLEDGEMENT

State of **Oklahoma** County of **Oklahoma**

On    March 18, 2022    before me, **Cassandra Bruxvoort**, a Notary Public, personally appeared **Edwin Otzoy**, **Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for InterLinc Mortgage Services, LLC, its successors and assigns** , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

**Cassandra Bruxvoort**, Notary Public

*Electronically Notarized in Person via Simplifile*
My commission expires: **04/16/2023**

Prepared by: **Pritesh A Jain**

## "DO NOT REMOVE ENDORSEMENT PAGE"

**File Information**

**eFILED IN THE OFFICIAL PUBLIC eRECORDS OF BEXAR COUNTY**
**LUCY ADAME-CLARK, BEXAR COUNTY CLERK**

| | |
|---|---|
| **Document Number:** | 20220093515 |
| **Recorded Date:** | April 13, 2022 |
| **Recorded Time:** | 3:15 PM |
| **Total Pages:** | 2 |
| **Total Fees:** | $26.00 |

**\*\* THIS PAGE IS PART OF THE DOCUMENT \*\***

**\*\* Do Not Remove \*\***

Any provision herein which restricts the sale or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this instrument was eFILED in File Number Sequence on this date and at the time stamped hereon by me and was duly eRECORDED in the Official Public Record of Bexar County, Texas on: 4/13/2022 3:15 PM



Lucy Adame-Clark
**Lucy Adame-Clark**
**Bexar County Clerk**

WHEN RECORDED MAIL TO: **FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402**

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned **CALIBER HOME LOANS, INC.**, located at **1525 BELT LINE RD., COPPELL, TX 75019**, Assignor, does hereby grant, assign, and transfer to **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING**, located at **55 BEATTIE PLACE, SUITE 110, MS#001, GREENVILLE, SC 29601**, Assignee, its successors and assigns, all Assignor's rights, title and interest in and to that certain Deed of Trust or Mortgage dated **JULY 22, 2019**, in the amount of **$201,286.00**, executed by **PABLO ROVIROSA REYES, JOINED HEREIN PRO FORMA BY MY SPOUSE, SAMANTHA LYNN ROVIROSA**, Trustor or Grantor, to **ALLAN B. POLUNSKY**, Original Trustee, to or for the benefit of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR INTERLINC MORTGAGE SERVICES, LLC, ITS SUCCESSORS AND ASSIGNS**, the Original Beneficiary or Grantee, recorded on **JULY 23, 2019** at Page  under Instrument No. **20190141487** in the Real Property Records of the County Clerk in and for **BEXAR** County, State of **TEXAS**, said property described on said Deed of Trust or Mortgage referred to herein:

**AS DESCRIBED IN SAID DEED OF TRUST OR MORTGAGE**

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on  **JUN 2 1 2023** .

**CALIBER HOME LOANS, INC., BY NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY IN FACT**

**KAYLA STANTON, SUPERVISOR**

STATE OF **SOUTH CAROLINA**      COUNTY OF **GREENVILLE**      ) ss.

On **JUN 2 1 2023**     , before me,     Aisha Butler     , personally appeared **KAYLA STANTON** known to me to be the **SUPERVISOR** of **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AS ATTORNEY-IN-FACT FOR CALIBER HOME LOANS, INC.** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

Aisha Butler      (COMMISSION EXP.

NOTARY PUBLIC



**File Information**

**eFILED IN THE OFFICIAL PUBLIC eRECORDS OF BEXAR COUNTY**
**LUCY ADAME-CLARK, BEXAR COUNTY CLERK**

| | |
|---|---|
| **Document Number:** | 20230113634 |
| **Recorded Date:** | June 23, 2023 |
| **Recorded Time:** | 3:04 PM |
| **Total Pages:** | 3 |
| **Total Fees:** | $30.00 |

## ** THIS PAGE IS PART OF THE DOCUMENT **

### ** Do Not Remove **

Any provision herein which restricts the sale or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this instrument was eFILED in File Number Sequence on this date and at the time stamped hereon by me and was duly eRECORDED in the Official Public Record of Bexar County, Texas on: 6/23/2023 3:04 PM



Lucy Adame-Clark
**Lucy Adame-Clark**
**Bexar County Clerk**

# Exhibit No. P-3

Shellpoint Mortgage Servicing
P.O. Box 9103
Temecula, CA  92589-9103



9307 1100 1170 1182 1083 66

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
Shellpoint Mortgage Servicing
P.O. Box 650840
Dallas, TX  75265-0840

Send Correspondence to:
Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC  29603

20241016-354

PABLO ROVIROSA REYES
11834 PURE SILVER
SAN ANTONIO, TX 78254-6236

# shellpoint

Sent Via Certified Mail™
9307 1100 1170 1182 1083 66

P.O. Box 10826
Greenville, SC 29603
**Phone:** 866-317-2347
**Fax:** 866-467-1137
www.shellpointmtg.com

10/16/2024

PABLO ROVIROSA REYES
11834 PURE SILVER
SAN ANTONIO, TX 78254-6236

Loan Number:  ▮▮▮▮▮▮▮
Property Address:    11834 PURE SILVER
                     SAN ANTONIO, TX 78254

Dear PABLO ROVIROSA REYES:

This letter is formal notice by Shellpoint Mortgage Servicing, the Servicer of the above-referenced loan, on behalf of NewRez LLC d/b/a Shellpoint Mortgage Servicing, that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay amounts due.

You have a right to cure your default. To cure the default, you must pay the full amount of the default on this loan by 11/20/2024 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). Failure to cure the default on or before this date will result in acceleration of the sums secured by the Security Instrument and sale of the property.

As of the date of this notice, the total amount required to cure the default is $4,180.82, which consists of the following:

| | | | |
|---|---|---|---|
| Next Payment Due Date: | | | 09/01/2024 |
| Total Monthly Payments Due: | | | $3,485.52 |
| 09/01/2024 | | at | $1,726.59 |
| 10/01/2024 | | at | $1,758.93 |
| Late Charges: | | | $585.30 |
| Other Charges: | | | |
| | Uncollected NSF Fees: | | $50.00 |
| Corporate Advance Balance: | | | $60.00 |
| Unapplied Balance: | | | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | | | **$4,180.82** |

You can cure this default by making a payment of $4,180.82 by 11/20/2024. Please note any additional monthly payments, late charges and other charges that may be due under the Note, Security Instrument and applicable law after the date of this notice must also be paid to bring your account current. You may contact our Loss Mitigation Department at 866-825-2174 to obtain updated payment information. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current default. Please include your loan number and property address with your payment and send to:

▮▮▮    Shellpoint Mortgage Servicing

W_TX_DEMAND    Rev. 01/2024
Page 1 of 3

9307 1100 1170 1182 1083 66

P.O. Box 650840
Dallas, TX 75265-0840

Overnight:
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601

If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 866-317-2347.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, Shellpoint Mortgage Servicing offers consumer assistance programs designed to help resolve delinquencies and avoid foreclosure. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternatives to foreclosure. If you would like to learn more about these programs, you may contact Hope Davis at 8668252174, ext. 9999, Monday - Friday 8:00AM to 9:00PM and Saturday 10:00AM to 2:00PM to discuss possible options. You may also visit our website www.shellpointmtg.com. WE ARE VERY INTERESTED IN ASSISTING YOU.

You have the right to reinstate the loan after acceleration and to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale. If foreclosure proceedings are undertaken, we may pursue a deficiency judgment, if permitted by applicable law. Failure to respond to this letter may result in the loss of your property.

**To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.**

Shellpoint Mortgage Servicing is the mortgage servicer for the mortgagee of the Deed of Trust and the parties have entered into an agreement granting Shellpoint Mortgage Servicing authority to service the mortgage and represent the mortgagee (the "Servicing Agreement"). Pursuant to the Servicing Agreement, Shellpoint Mortgage Servicing is granted authority to collect and service debt associated with the Deed of Trust. Under §51.0025 of the Texas Property Code, Shellpoint Mortgage Servicing, as mortgage servicer, is authorized to administer any resulting foreclosure of the property covered by the Deed of Trust on behalf of the Mortgagee. All communication about your mortgage should be made through our Loss Mitigation Department at 866-825-2174 at P.O. Box 10826, Greenville, SC 29603

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.**

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies by Shellpoint Mortgage Servicing.

**Attention Servicemembers and Dependents: Assert and protect your rights as a member of the armed forces of the United States. If you or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.** Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service, or have been within the last twelve (12) months, **AND** joined after signing the Note and Security Instrument now in default, please notify Shellpoint Mortgage Servicing immediately. When contacting Shellpoint Mortgage Servicing as to your military service, you must provide positive proof as to your military status. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil, 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified housing counselors (https://www.hud.gov/counseling). You can also contact Hope Davis toll-free at 8668252174, ext. 9999 if you have questions about your rights under SCRA.

For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call 1-800-569-4287 or visit https://www.hud.gov/counseling. You may also contact the Homeownership Preservation Foundation's Hope hotline at 1-888-995-HOPE (4673).

If your loan was originated as a Texas Home Equity Loan under the Texas Constitution, Article XVI, Section 50(a)(6), your property will be scheduled for foreclosure in accordance with Rules 735 and 736 of the Texas Rules of Civil Procedure and the Texas Constitution, by obtaining a court order for the foreclosure.

This matter is very important. Please give it your immediate attention.


Sincerely,

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603
866-317-2347

# Exhibit No. P-4

**Return To:** Caliber Home Loans, Inc.
75 Beattie Place
Suite 300
Greenville, SC 29601

# FHA Partial Claim Deed of Trust

███████

MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM
ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE
IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY
NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**DEFINITIONS.** Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) *"Security Instrument"* means this document, which is dated November 18, 2022, together with all Riders to this document.

★ (B) *"Borrower"* is PABLO R REYES Spouse of SAMANTHA LYNN ROVIROSA. Borrower is the grantor under this Security Instrument.

(C) *"Lender"* is Secretary of Housing and Urban Development. Lender's address is 451 Seventh Street, SW, Washington, DC 20410. Lender is the beneficiary under this Security Instrument.

(D) *"Trustee"* is ALLAN B. POLUNSKY. Trustee's address is 17806 IH 10 WEST, SUITE 450, SAN ANTONIO, TX 78257.

(E) *"Note"* means the promissory note signed by Borrower and dated November 18, 2022. The Note states that Borrower owes Lender Forty eight thousand three hundred eighty-four and 02/100 Dollars (U.S. $48,384.02). Borrower has promised to pay this debt in full not later than August 1, 2049.

(F) *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

(G) *"Loan"* means the debt evidenced by the Note, late charges due under the Note, and all sums due under this Security Instrument.

(H) *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) *"Escrow Items"* means those items that are described in Section 3.

★ SEE EXHIBIT "B" ATTACHED HERETO.

(L) *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) *"RESPA"* means the *Real Estate Settlement Procedures Act* (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, *"RESPA"* refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(O) *"Secretary"* means the Secretary of the United States Department of Housing and Urban Development or his designee.

(P) *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY.** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of Bexar [Name of Recording Jurisdiction] The legal description to the Property may be attached to this Agreement by the Servicer if required.

**Parcel ID Number:** 1185045 which currently has the address of 11834 PURE SILVER [Street] SAN ANTONIO [City], Texas 78254-6236 [Zip Code] (*"Property Address"*):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the *"Property."*

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

**2. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**3. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**4. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 10410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**5. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**6. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**7. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 7, the term *"Lender"* includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law. Lender or its designee shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be public, occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 7, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the non-judicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 (*"Act"*) (12 *U.S.C.* Section 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property

Case 5:25-cv-00616    Document 1-1    Filed 06/03/25    Page 38 of 45

as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph or applicable law.

**8. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**9. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**10. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**11. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**12. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the *Texas Constitution*. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

**13. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

_____     12/01/2022
**PABLO ROVIROSA REYES**                              **Date**

Case 5:25-cv-00616   Document 1-1   Filed 06/03/25   Page 39 of 45

**Acknowledgment**

State of Texas

County of Bexar _____

This instrument was acknowledged before me on ___12|01|2022___ by
 PABLO ROVIROSA REYES

_Notary Public_

Marcy Trevino
_Notary Public Name_

My Commission Expires:
 07|13|2023

TO BE COMPLETED BY THE NOTARY PUBLIC - MARK THE APPROPRIATE BOX APPLICABLE TO YOUR NOTARIAL ACKNOWLEDGMENT:

☐ This notarial act was a traditional, in person notarization; or

☐ This notarial act was an online notarization whereby the person(s) appeared before me by interactive two-way audio and video conference technology that met the online notarization requirements under Subchapter C, Chapter 406, *Government Code*, and rules adopted under that subchapter.

Case 5:25-cv-00616    Document 1-1    Filed 06/03/25    Page 40 of 45

# Exhibit "A"

[Name of Recording Jurisdiction]:
LOT 16, BLOCK 134, SILVER OAKS SUBDIVISION UNIT 20, A SUBDIVISION IN BEXAR COUNTY, TEXAS,
ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 9849, PAGE 208, OF THE DEED AND
PLAT RECORDS OF BEXAR COUNTY, TEXAS.
APN #:  1185045

## EXHIBIT B

*Caliber Home Loans has taken the position that we will only be using the names appearing on the Note as the names that should appear on the Partial Claim Deed of Trust..*

Per the Mortgage, Section 13, If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed plus the charges as described in Section 4(d).

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the consent of the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Therefore, we have not included **SAMANTHA LYNN ROVIROSA** as a signor on the Partial Claim Deed of Trust.

**File Information**

**eFILED IN THE OFFICIAL PUBLIC eRECORDS OF BEXAR COUNTY**
**LUCY ADAME-CLARK, BEXAR COUNTY CLERK**

| | |
|---|---|
| **Document Number:** | 20220282930 |
| **Recorded Date:** | December 08, 2022 |
| **Recorded Time:** | 11:18 AM |
| **Total Pages:** | 8 |
| **Total Fees:** | $50.00 |

**\*\* THIS PAGE IS PART OF THE DOCUMENT \*\***

**\*\* Do Not Remove \*\***

Any provision herein which restricts the sale or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this instrument was eFILED in File Number Sequence on this date and at the time stamped hereon by me and was duly eRECORDED in the Official Public Record of Bexar County, Texas on: 12/8/2022 11:18 AM



*Lucy Adame-Clark*
**Lucy Adame-Clark**
**Bexar County Clerk**

# Exhibit No. P-5

## NOTICE OF ASSESSMENT LIEN

**OWNER OF RECORD:** Pablo Rovirosa Reyes
**LIEN HOLDER:** Silver Oaks Homeowners Association, Inc.
**AMOUNT OF LIEN:** $1,847.61 ($907.61 homeowner assessments and late fees; $940.00 attorney's fees and expenses)
**PROPERTY ADDRESS:** 11834 Pure Silver, San Antonio, Texas 78254-6236
**LEGAL DESCRIPTION:** Lot 16, Block 134, County Block 4450F, Silver Oaks Subdivision, Unit 20, Bexar County, Texas

Notice is hereby given that the above-described Property is encumbered and subject to indebtedness owed to the lien holder by the Owner in the amount set forth above for due but unpaid assessments, late fees, legal expenses, and filing fees, and that pursuant to the Declaration of Covenants, Conditions and Restrictions for Silver Oaks, executed on May 18, 2005, recorded in Volume 11403, Page 1503, Official Public Records of Real Property of Bexar County, Texas, as amended by the Supplemental Declaration Providing for Annexation of Silver Oaks Subdivision, Units 11, 20 and 22, into Silver Oaks Homeowners Association, Inc., executed on January 30, 2013, recorded in Volume 15924, Page 2238, Official Public Records of Real Property of Bexar County, Texas as amended, the lien holder has a Lien on the Property described above for said sums.

Notice is further given that the amount of the Lien continues to increase pursuant to the terms of the referenced Declaration.

Executed this _____1_____ day of _____August_____, 2023.

SILVER OAKS HOMEOWNERS ASSOCIATION, INC., a Texas non-profit corporation

Kristie Rose-Zapp, President
FirstService Residential San Antonio, LLC
3424 Paesanos Parkway, Suite 100
Shavano Park, TX 78231

STATE OF TEXAS §
§
COUNTY OF BEXAR §

Before me, the undersigned notary public, on this day personally appeared Kristie Rose-Zapp acting on behalf of SILVER OAKS HOMEOWNERS ASSOCIATION, INC., known to me or proved to me by presentation to me of a governmentally-issued identification card to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that they executed it for the purposes and consideration expressed in it.

Given under my hand and seal of office the _____1_____ day of _____August_____, 2023.

Notary Public, State of Texas

**AFTER RECORDING RETURN TO:**
Tom L. Newton, Jr.
Allen, Stein & Durbin, P.C.
P. O. Box 101507
San Antonio, Texas 78201
05465.0430.2457074.jr



RONDA LAJEAN SHAW
Notary ID #130910291
My Commission Expires
November 22, 2024



*VG-66-2023-20230146334*

**File Information**

## FILED IN THE OFFICIAL PUBLIC RECORDS OF BEXAR COUNTY
## LUCY ADAME-CLARK, BEXAR COUNTY CLERK

| | |
|---|---|
| **Document Number:** | 20230146334 |
| **Recorded Date:** | August 09, 2023 |
| **Recorded Time:** | 1:24 PM |
| **Total Pages:** | 2 |
| **Total Fees:** | $26.00 |

### ** THIS PAGE IS PART OF THE DOCUMENT **

### ** Do Not Remove **

Any provision herein which restricts the sale or use of the described real property because of race is invalid and unenforceable under Federal law

STATE OF TEXAS, COUNTY OF BEXAR

I hereby Certify that this Instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Bexar County, Texas on:
8/9/2023 1:24 PM



Lucy Adame-Clark
Bexar County Clerk